## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **CRISTINA FELIX AND RONNELL YOUNG,** | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:21-cv-1130** |
| | § | |
| **EK REAL ESTATE SERVICES OF NY, LLC, AN AFFILIATE OF EASYKNOCK, INC., EASYKNOCK, INC., AND LENDINGONE, LLC,** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| *Defendants*. | § | |

## ORIGINAL COMPLAINT

Plaintiffs **CRISTINA FELIX AND RONNELL YOUNG ("FELIX AND YOUNG")** file this *Original Complaint* against the unauthorized, predatory lending tactics of Defendants **EK REAL ESTATE SERVICES, OF NY, LLC**, an Affiliate of **EASYKNOCK, INC., EASYKNOCK, INC.,** and **LENDINGONE, LLC**, and seeks redress for, among other causes, multiple violations of the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.* (hereinafter TILA) and Federal Reserve Board of Regulation Z, 12 C.F.R. § 226 promulgated pursuant thereto, and multiple violations of Texas Finance Code, including §§ 305.001, *et seq.*, and §§ 341.001, *et seq.,* and in support thereof would show the Court as follows:

## PARTIES

1.      Plaintiff **CRISTINA FELIX ("FELIX")** is a resident of Tarrant County, Texas and is the person who owned the real property at issue in this suit.

2.      Plaintiff **RONNELL YOUNG ("YOUNG")** is a resident of Tarrant County, Texas and is the person who owned the real property at issue in this suit.

3.      Defendant **EK REAL ESTATE SERVICES OF NY, LLC, an Affiliate of EASYKNOCK, INC. ("EK REAL ESTATE"),** is a foreign limited liability company organized and existing under the laws of the State of Delaware but, as of September 27, 2019, is authorized to do business in the State of Texas. **EK REAL ESTATE** conducted business in this state before that time, including in connection with the transactions at issue in this lawsuit, without properly being authorized to do so. **EK REAL ESTATE's** principal office is located at 79 Madison Avenue, 5th Floor, New York, NY 10016, and it may be served with a copy of this *Original Complaint* by and through its registered agent for service, Corporation Services Company d/b/a CSC – Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Travis County, Texas 78701.

4.      Defendant **EASYKNOCK, INC., ("EASYKNOCK")** is a foreign corporation organized and existing under the laws of Delaware whose principal office is 215 Park Avenue South, Suite 1713, New York, NY 10003. **EASYKNOCK** is the sole member of Defendant **EK REAL ESTATE**. **EASYKNOCK** regularly engages in business in Texas without registering with the Texas Secretary of State for the right to do business in Texas, including in connection with the transactions at issue in this lawsuit; thus, **EASYKNOCK** may be served through the Texas Secretary of State pursuant to FED. R. CIV. P. 4(h)(1)(A) and TEX. CIV. PRAC. & REM. CODE § 17.044, via US Mail: Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711-2079, or via Overnight Delivery: Service of Process, Secretary of State, James E. Rudder Building, 1019 Brazos, Room 105, Austin, Texas 78701.

5.      Defendant **LENDINGONE, LLC ("LENDINGONE")** is a foreign corporation organized and existing under the laws of the State of Delaware but, as of July 2, 2020, is authorized to do business in the State of Texas. **LENDINGONE** conducted business in this state before that

time, including in connection with the transactions at issue in this lawsuit, without properly being authorized to do so. **LENDINGONE's** principal office is located at 901 Northwest 51st Street, Suite 150, Boca Raton, FL  33431, and it may be served with a copy of this *Original Complaint* by serving its registered agent for service Registered Agents, Inc., 5900 Balcones Drive, Suite 100, Austin, Travis County, Texas 78731.

## JURISDICTION

6.     Jurisdiction is proper in this Court for the violations of the Truth-In-Lending Act pursuant to 15 U S.C. §§ 1601, *et seq.*, and the Fair Debt Collection Act pursuant to 15 U S.C. §§ 1692, *et seq.*, as well as 28 U.S.C. §§ 1331 and 1337. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a) because this action is between citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs. This Court has jurisdiction over the Texas state law claims under principles of pendent and ancillary jurisdiction.

7.     This Court has general personal jurisdiction over Defendants **EK REAL ESTATE**, **EASYKNOCK**, and **LENDINGONE** under the Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE §§ 17.041, *et seq.*, because, as described in this Complaint, each Defendant has purposefully availed itself of the benefits of conducting business in Texas, each Defendant's contacts with Texas are continuous and systematic, and each Defendant can be considered essentially at home in Texas. This Court also has specific personal jurisdiction over Defendants **EK REAL ESTATE**, **EASYKNOCK**, and **LENDINGONE** under the Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE §§ 17.041, *et seq.*, because, as described in this Complaint, each Defendant purposefully directed its wrongful activities at Plaintiffs **FELIX AND YOUNG**, a resident of the forum, each Defendant's conduct caused, and Plaintiffs **FELIX AND YOUNG**'s suit seeks redress for, harm caused by each of Defendant's wrongful actions which either took

place inside of the forum and/or were purposefully directed at Plaintiffs **FELIX AND YOUNG** in the forum.

## VENUE

8.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2) and Tex. Fin. Code § 349.401 since this case arises from a dispute concerning real property situated in Tarrant County, Texas and because Tarrant County, Texas is a judicial district in which the underlying transactions and a substantial part of the events or omissions giving rise to the claims occurred. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1) because, for venue purposes, each Defendant is deemed to reside in Tarrant County, Texas since each Defendant is subject to the court's personal jurisdiction in this judicial district with respect to this civil action in question and, for venue purposes, all Defendants are deemed residents of the State in which the district is located.

## FACTS

9.     On or about September 2009, Plaintiff **FELIX** purchased a house and the real property located at 708 Dema Lane, Burleson, Texas 76028 (the "Property"). **FELIX** resided at the Property continuously from that that date through the present. At the time of the transactions at issue in this dispute, the Property was designated as **FELIX's** residential homestead.

10.     In the Summer of 2019, **FELIX AND YOUNG** were having financial trouble and were behind on their property taxes. **FELIX** did not have a job at the time and **YOUNG**'s salary was not enough to cover all of their expenses. At that time, **FELIX AND YOUNG** were unable to borrow money from a conventional financial institution because of bad credit, unemployment and low income, and the Property being their homestead.

11.     Around that time, **FELIX AND YOUNG** conducted an Internet search for potential home equity lenders. Through this online search for a home equity lender, **FELIX AND YOUNG** found an alternative lender on the Internet, Defendant **EASYKNOCK**, the sole Member of **EK REAL ESTATE**. Upon information and belief, **EASYKNOCK** used online target ad words to increase its visibility on searches for home equity lenders.

12.     As part of a follow-up with this potential home equity lender, **EASYKNOCK** indicated to **FELIX AND YOUNG** that it would loan them money in exchange for the security of a Deed to the Property and the execution of a lease agreement.

13.     This type of transaction is known as a "Sale-Leaseback," and it is highly disfavored in Texas, particularly when the transaction involves a Texas citizen's homestead. **EASYKNOCK** represented that the lease agreement would include an option to pay off **EASYKNOCK's** loan, which would be secured by a portion of **FELIX AND YOUNG's** equity in their Property. **EASYKNOCK** also promised **FELIX AND YOUNG** that they would retain the remaining equity in their Property—the equity difference between the Property's total market value of their Property and the amount of **EASYKNOCK's** secured funding.

14.     All communications concerning the transaction between **FELIX AND YOUNG** were with **EASYKNOCK** and its employees or representatives.  All material sent to **FELIX AND YOUNG** was sent by **EASYKNOCK,** the sole Member to Defendant **EK REAL ESTATE**.

15.     **FELIX AND YOUNG** only ever intended the transaction to be a home equity loan, not a complete sale of their rights and interest in their homestead. **FELIX AND YOUNG** did not discover that the title to the house was not in their names until **FELIX** registered her children for school during this school year.

16.     None of Defendants **LENDINGONE, EASYKNOCK,** or **EK REAL ESTATE** is a qualified lender in Texas with the Texas Office of Consumer Credit Commission (OCCC). At the time of these transactions, none of the Defendants was even registered to conduct any type of business in Texas—despite them regularly doing so.

17.     Despite not being a qualified lender in Texas at the time of the "Sale-Leaseback" transaction, Defendants **EASYKNOCK** and **EK REAL ESTATE** represented to **FELIX AND YOUNG** that the transaction was a "loan." When **FELIX** spoke to **EASYKNOCK** and **EK REAL ESTATE**, she also referred to the transaction as a "loan." **EASYKNOCK** and **EK REAL ESTATE** answered any questions she had about the "loan" without any clarification about the structure of the deal. **EASYKNOCK** and **EK REAL ESTATE** never used the word "sale" in describing the deal. When **EASYKNOCK** and **EK REAL ESTATE** talked about getting the Property back, they referred to it as "turning over" the Property back to **FELIX AND YOUNG**. Clearly, Defendants **EK REAL ESTATE** and **EASYKNOCK** recognized that the transaction made the basis of this suit was a "loan" and that they were acting as "lenders."

18.     To induce **FELIX AND YOUNG** to close on their "Sale-Leaseback" loan transaction, Defendants **EASYKNOCK** and **EK REAL ESTATE** provided **FELIX AND YOUNG** with examples of how the transaction would work. They represented to **FELIX AND YOUNG** that they could "release" some of the equity in their Property, continue to live in their home as long as they wanted, not have to pay insurance and taxes for their Property while they lived there, and retain a percentage of the equity in their Property if/when **FELIX AND YOUNG** were ready to sell.

19.     Defendants **EASYKNOCK** and **EK REAL ESTATE** told **FELIX AND YOUNG** that the deal was not based on **FELIX AND YOUNG's** credit history. Instead, the deal was based

only on the equity in their home. Contrary to **EASYKNOCK's** representations that their poor credit history would not matter for the transaction to move forward, **EASYKNOCK** and **EK REAL ESTATE** withheld the sum of $7,092.00 from the closing proceeds, which appeared on the HUD settlement statement as a "Rent Holdback."

20.     Feeling as though they had no other home equity loan options and facing financial pressure, on or about July 25, 2019, **FELIX AND YOUNG** agreed to proceed with Defendants **EASYKNOCK** and **EK REAL ESTATE**'s "Sale-Leaseback" loan transaction. Based on their representations about what amounted to a home equity loan, on or about July 25, 2019, **FELIX AND YOUNG** deeded the Property to Defendant **EK REAL ESTATE**. *(See Exhibit "A" – General Warranty Deed with Vendor's Lien which is attached hereto and incorporated herein for all purposes.)* The Warranty Deed contained a Vendor's Lien in favor of Defendant **LENDINGONE**, who apparently had loaned to **EK REAL ESTATE** the sum of $112,000.00 to facilitate the "Sale-Leaseback" loan transaction for the Property. Upon information and belief, Defendant **EK REAL ESTATE** further executed a *Note, Deed of Trust, Commercial Security Agreement and Assignment of Rents* in favor of Defendant **LENDINGONE**.

21.     Defendant **LENDINGONE** advertises itself as a specialized mortgage lender which provides lending in all states except for Alaska, Nevada, North Dakota, South Dakota, and Utah. **LENDINGONE** is only a licensed lender in four states: Arizona, Minnesota, Oregon, and Vermont. As a licensed lender, **LENDINGONE** is or should be familiar with the requirements and restrictions imposed on mortgage lenders under federal and Texas law, including those found in the Truth in Lending Act, the Texas Finance Code, and the Texas Property Code.

22.     Defendant **LENDINGONE** either did know or should have known that Defendants **EASYKNOCK** and **EK REAL ESTATE**'s "Sale-Leaseback" loan transaction with **FELIX AND**

**YOUNG** and tens (if not hundreds) of other Texas citizens failed to comply with these requirements and restrictions. Nevertheless, Defendant **LENDINGONE** facilitated and enabled Defendants **EASYKNOCK** and **EK REAL ESTATE**'s scheme by providing funding for a substantial portion of their improper loan transactions in Texas, including **FELIX AND YOUNG**'s.

23.     As a further part of these transactions, **FELIX AND YOUNG** entered into a *Lease Agreement* with Defendant, **EK REAL ESTATE**. *(See Exhibit "B" – Lease Agreement which is attached hereto and incorporated herein for all purposes.)* The Lease was for an initial period of twelve (12) months at a rental rate of $15,312.00 per year ($1,276.00 per month) with the first payment being a prorated amount for July 2019, due and payable at closing on July 25, 2019.[1]

24.     The Lease was renewable indefinitely for consecutive one-year terms, and, if certain conditions were met, **FELIX AND YOUNG** could pay off the loan by "repurchasing" the Property. This option to buy back the property only lasted through the first three years of the rental agreement. To do so, however, **FELIX AND YOUNG** would have to tender a payment of $111,300.00, which amount escalated on an annual basis (at a rate equal to no less than 102.5% of the prior year's amount), plus all closing costs (including, but not limited to, broker's commissions, transfer taxes, attorneys' fees, and filing fees) paid by Defendant **EK REAL ESTATE**. In the interim, **FELIX AND YOUNG** were responsible for paying all Rent and Additional Rent due Defendant **EK REAL ESTATE** under the Lease.

25.     For the "right" to enter into a Lease for their Property—potentially, in perpetuity— **EK REAL ESTATE** charged **FELIX AND YOUNG** $60,000.00, an amount which was deducted

---

[1]     The HUD statement (Ex. C) shows that **FELIX AND YOUNG** paid the initial pro-rated rent payment for July 2019 from the "loan" proceeds to **EK REAL ESTATE**.

from the $166,000.00 alleged "Contract Sales Price." The $15,312.00 per year base rent for year 1 of the Lease escalated in every consecutive one-year term of the Lease. After the "Sale-Leaseback" loan transaction, **FELIX AND YOUNG** remained solely responsible for all repairs and maintenance on the Property. If Defendant **EK REAL ESTATE** paid for any repairs or maintenance, **FELIX AND YOUNG**, as the Tenant was responsible for reimbursement to Defendant **EK REAL ESTATE** as "Additional Rent."

26. Upon information and belief, the monthly rent charged by Defendants **EASYKNOCK** and **EK REAL ESTATE** to **FELIX AND YOUNG** exceeded the fair market rental rates in Burleson, Texas for similar properties. Indeed, Defendants **EASYKNOCK** and **EK REAL ESTATE** use a set formula (and not market rates) to charge victims of their wrongful "Sale-Leaseback" loan scheme, like Plaintiff **FELIX AND YOUNG**, monthly rent equal to approximately 0.75% of the equity amount **LENDINGONE** provided **EASYKNOCK** and **EK REAL ESTATE** at close (9% interest per year) *plus* prorated taxes and insurance for the Property. Thus, the monthly "rent" to **EASYKNOCK** was not designed based on market rates for leasing properties like **FELIX AND YOUNG'S**. Rather, this monthly payment termed "rent" consisted of every amount that this transaction would cost **EASYKNOCK** on a monthly basis, monthly insurance, monthly property taxes, and monthly interest on **LENDINGONE'S** loan to **EASYKNOCK** and **EK REAL ESTATE**. And **EASYKNOCK** and **EK REAL ESTATE** took security on the front end of this transaction in the form of **FELIX AND YOUNG'S** entire equity value in their home, rather than just the value of the equity needed to secure the amount funded. **EASYKNOCK** and **EK REAL ESTATE** did this surreptitiously to ensure that its transaction costs would always be covered by **FELIX AND YOUNG'S** alleged retained equity in the Property,

not just the equity covered by its home equity loan funding. All invoices for the rent, past due rent, and other charges came from Defendant **EASYKNOCK.**

27.     Defendants never asked for, nor did they ever receive, a waiver of homestead from **FELIX AND YOUNG** in the "Sale-Leaseback" loan transaction.

28.     Upon information and belief, **EK REAL ESTATE** and **EASYKNOCK** obtained an appraisal to justify the $166,000.00 value ascribed to **FELIX AND YOUNG**'s Property.

29.     The Property was burdened by only two obligations that would need to be satisfied at closing out of the proceeds from the $166,000 "Contract Sales Price:" (1) a payoff to Resolution Finance, LLC for $29,619.80, and (2) property taxes for $2,456.16.

30.     Despite having more than $125,000.00 in equity in their Property, at the closing, **FELIX AND YOUNG** received "net sales proceeds" of only $57,396.75 out of the listed $166,000.00 "Contract Sales Price." In addition to outrageous closing costs burdened upon **FELIX AND YOUNG** by Defendants, on the Settlement Statement, Defendants **EK REAL ESTATE** and **EASYKNOCK** deducted a charge of $60,000.00 as a "Termination Option Price" from **FELIX AND YOUNG**'s equity in the Property. *(See Exhibit "C" – HUD – Settlement Statement which is attached hereto and incorporated herein for all purposes.)*

31.     In essence, Defendants stole **FELIX AND YOUNG'S** property worth at least $166,000.00 for a total of only about $89,472.71 in value to **FELIX AND YOUNG** at closing (payment of $57,396.75 to **FELIX AND YOUNG** and the payoff of $32,075.96 in obligations tied to the Property).

32.     At the same time, pursuant to the "Sale-Leaseback" scheme, Defendants **EK REAL ESTATE** and **EASYKNOCK** strapped **FELIX AND YOUNG** to rental payments of $15,312.00 for the first twelve months of a lease, a rental amount which escalated over each consecutive one-

year period before **FELIX AND YOUNG** had the opportunity to "purchase' back the Property for the sum of $111,300 (which also escalated on an annual basis), *plus* all amounts paid by **EK REAL ESTATE** at closing. **FELIX AND YOUNG** were also responsible for Defendant **EK REAL ESTATE's** inflated closing costs and any other Rents or Additional Rents that were due.

33.     No disclosures were provided to **FELIX AND YOUNG** by either Defendants **EASYKNOCK** or **EK REAL ESTATE** pursuant to the Truth-In-Lending Act or the Texas Finance Code, which require the following disclosures, among others, be given **FELIX AND YOUNG** before they entered into this transaction:

> a.     Full disclosure of loan costs and terms;
>
> b.     The right of rescission;
>
> c.     Disclosing to the borrower when mortgage was reassigned;
>
> d.     Disclosure of the caps on high mortgage costs; and
>
> e.     Assessing whether the borrower had the ability to repay the loan prior to entering into the transaction with the borrower.

34.     Indeed, neither **EASYKNOCK** nor **EK REAL ESTATE** (nor **LENDINGONE**) conducted any substantive assessment of **FELIX AND YOUNG**'s financial ability to repay the "loan" or to pay the monthly rent, Additional Rent, or other amounts due under the Lease. Prior to entering into the "Sale-Leaseback" loan transaction, Defendants **EK REAL ESTATE** and **EASYKNOCK** knew that **FELIX** was unemployed and that **YOUNG** did not have a salary high enough to support their obligations even before they entered into this excessively costly deal. Thus, Defendants knew **FELIX AND YOUNG** would be unable to pay the monthly and other Lease payments, let alone qualify for another loan to regain title to their residential homestead Property.

35.     Despite their best efforts to make their ever-increasing monthly rent, **FELIX AND YOUNG** have reached the point that they can no longer make their rent payments. Defendants **EK**

**REAL ESTATE** and **EASYKNOCK** have now threatened eviction against **FELIX AND YOUNG**.

<u>**SUIT TO QUIET TITLE TO THE PROPERTY**</u>

36.     Plaintiffs **FELIX AND YOUNG** adopt all preceding paragraphs as if recited verbatim herein.

37.     Plaintiffs **FELIX AND YOUNG** were the fee simple owner of the Property which was their homestead prior to the sale-leaseback transaction made the subject of this suit.   Section 41.006 of the Texas Property Code, states as follows:

(a)     Except as provided by Subsection (c), any sale or purported sale in whole or in part of a homestead at a fixed purchase price that is less than the appraised fair market value of the property at the time of the sale or purported sale, and in connection with which the buyer of the property executes a lease of the property to the seller at lease payments which exceed the fair market rental value of the property, is considered to be a loan with all payments made from the seller to the buyer in excess of the sales price considered to be interest subject to Title 4, Finance Code.

(b)     The taking of any deed in connection with a transaction described by this section is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and the deed is void and no lien attaches to the homestead property as a result of the purported sale . . . .

38.     Although, Defendant **EK REAL ESTATE** claimed that it was purchasing **FELIX AND YOUNG's** property for $166,000, **FELIX AND YOUNG** only received the sum of $89,472.71 in value from those "sales" proceeds and executed a *Lease with Tenant Option* leasing back the Property at a rental rate that exceeded similar properties in Burleson, Texas, especially given the condition the Property was in at the time of the "pretend sale" and leaseback.  Thus, **EK REAL ESTATE** "purchased" **FELIX AND YOUNG's** property for far less than the appraised market value at the time of the purported sale, and all payments made (and charges debited) from the **FELIX AND YOUNG** to **EK REAL ESTATE** and **EASYKNOCK** in connection with the

12

leaseback far exceed the fair market rental value of the Property.  For these reasons, the "sale-leaseback" transaction is deemed a loan under the Texas Property Code, all payments made from **FELIX AND YOUNG** to **EK REAL ESTATE** and **EASYKNOCK** in excess of the sales price are considered interest subject to the Texas Finance Code, the deed conveyed as part of the transaction is **VOID** and no lien ever legally attached to **FELIX AND YOUNG's** homesteaded Property.   At the time of the transaction, Defendant **EK REAL ESTATE** borrowed from Defendant **LENDINGONE** the sum of $112,000.00 and **LENDINGONE** filed a Deed of Trust against Plaintiffs **FELIX AND YOUNG's** Property. As a result, Plaintiff **FELIX AND YOUNG** seek to quiet title to the Property voiding the *General Warranty Deed with Vendor's Lien* given to Defendant **EK REAL ESTATE** and the Deed of Trust given by Defendant **EK REAL ESTATE** to Defendant **LENDINGONE.**  Given that this is an impermissible transaction under § 41.006 of the Texas Property Code requesting the Court find that Defendants **EK REAL ESTATE** and **LENDINGONE** have no interest, legal, equitable or otherwise to their Property and that Plaintiffs **FELIX AND YOUNG** are the rightful owners of the Property.

## DECLARATORY JUDGMENT

39.     Plaintiffs **FELIX AND YOUNG** adopt all preceding paragraphs as if recited verbatim herein.

40.     Plaintiffs **FELIX AND YOUNG** are entitled to declaratory relief under the Texas Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code. Plaintiffs seek the following declarations:

    a.     That Defendants **EK REAL ESTATE, EASYKNOCK** and **LENDINGONE** have no rights, title or ownership interest in the Property; and

13

b.     That the General Warranty Deed with Vendor's Lien executed by **FELIX AND YOUNG** on July 25, 2019 is void as a matter of law;

c.     That the Deed of Trust given by Defendant **EK REAL ESTATE** to Defendant **LENDINGONE** is void; and

d.     That **FELIX AND YOUNG** are the rightful owner of the Property.

e.     the Property at issue in this dispute was **FELIX AND YOUNG's** residential homestead;

f.     because the Property was **FELIX AND YOUNG's** residential homestead, any transaction associated with the Property required compliance with the Texas Property Code, including the restrictions of Tex. Prop. Code § 41.006 (a) and (b);

g.     Defendants **EASYKNOCK**, **EK REAL ESTATE**, and **LENDINGONE's** taking of a deed in connection with the Sale-Leaseback transaction at issue in this case is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code (Tex. Bus. & Com. Code § 17.41 *et seq.*);

h.     Defendants' deed in connection with the underlying Sale-Leaseback transaction is void and no lien legally attached to **FELIX AND YOUNG's** residential homestead property (the Property) as a result of the purported sale;

i.     The Sale-Leaseback transaction at issue in this case is a "loan" under the Texas Finance Code, *see* Tex. Fin. Code § 341.001(9) and (10), and is subject to the requirements of Texas Finance Code § 342.001, *et seq.* (Consumer Loans) and § 343.001, *et seq.* (Home Loans).

j.     The Termination Option Price, Rent, and Additional Rent is considered interest under the Texas Property Code.

41.     Plaintiffs have retained the law firms of Robin M. Ziek, Adam Pogach, and Feldman & Feldman, P.C. to represent them in this action and have agreed to pay the foregoing attorneys their reasonable and necessary attorneys' fees. An award of reasonable and necessary attorneys' fee in the amount of at least $100,000.00 or an amount as determined by the trier of fact to Plaintiffs would be equitable and just and, therefore, authorized by § 37.009 of the Tex. Civ Prac. & Rem. Code.

## VIOLATIONS OF THE TRUTH IN LENDING ACT

42.    Plaintiffs **FELIX AND YOUNG** adopts all preceding paragraphs as if recited verbatim herein.

43.    Plaintiffs **FELIX AND YOUNG** are natural persons.

44.    At all times relevant hereto, Defendants **EASYKNOCK** and **EK REAL ESTATE** regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable, making Defendants a creditor within the meaning of the TILA, 15 U.S.C. § 1602(g) and Regulation Z § 226.2(a)(17). Under Texas law, a sale-leaseback transaction, like the one at issue in this case, is a "loan." *See* Tex. Fin. Code § 341.001(9) and (10).

45.    The transaction in question is a consumer credit transaction within the meaning of TILA, 15 U.S.C. § 1602 and Regulation Z § 226.2. The security for the transaction is the primary dwelling of **FELIX AND YOUNG**.

46.    Defendants **EASYKNOCK** and **EK REAL ESTATE** did not provide to Plaintiffs **FELIX AND YOUNG** a Truth In Lending Disclosure statement and as a result violated the requirements of the Truth In Lending Act in the following ways, among others:

    a.    By failing to provide the required disclosures prior to the consummation of the transaction in violation of 15 U.S.C. §§ 1638(b) and 1639, and Regulation Z § 226.17(b);

    b.    By failing to make the required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. §§ 1632(a) and 1639, and Regulation Z § 226.17(a);

    c.    By failing to include in the finance charges certain charges imposed by Defendants payable by Plaintiffs incident to the extension of credit as required by 15 U.S.C. § 1605 and Regulation Z § 226.18(d);

    d.     By failing to calculate and disclose finance charges on the amount financed per 15 U.S.C. § 1606 and Regulation Z § 226.22;

    e.     By failing to disclose that **FELIX AND YOUNG** had a right of rescission;

    f.     By failing to disclose to **FELIX AND YOUNG**: "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan," as per 15 U.S.C. § 1639; and

    g.     By failing to meet the minimum standards for residential mortgage loans per 15 U.S.C. § 1639c, including the ability to repay standards and the prohibition on arbitration agreements in connection with **FELIX AND YOUNG**'s principal dwelling.

47.    By reason of the aforesaid violations of the TILA and Regulation Z, Defendants are liable to Plaintiffs **FELIX AND YOUNG** in the amount of twice the finance charge, actual damages to be established at trial, attorney's fees and costs, and any other amounts provided for under 15 U.S.C. § 1640.

## TEXAS DECEPTIVE TRADE PRACTICES

48.    Plaintiffs **FELIX AND YOUNG** adopt all preceding paragraphs as if recited verbatim herein.

49.    Plaintiffs **FELIX AND YOUNG** are consumers under the Texas Deceptive Trade Practices Act ("DTPA") because Plaintiffs are individuals who sought goods or services by purchase/lease.

50.    Defendants **EK REAL ESTATE** and **EASYKNOCK** violated the DTPA when Defendants engaged in false, misleading, or deceptive acts that Plaintiffs relied on to Plaintiffs' detriment. Specifically, Defendants violated the DTPA, among others, as follows:

    a.     Representing that an agreement confers or involves rights, remedies, or obligations that it does not or that are prohibited by law.

16

b.   Failing to disclose information about goods and services that was known at the time of the transaction if the failure to disclose was intended to induce the consumer to enter into a transaction that the consumer would not have entered into if the information had been disclosed.

c.   Causing confusion or misunderstanding about the source, sponsorship, approval or certification of goods or services by another.

51.   Defendants **EK REAL ESTATE** and **EASYKNOCK** violated the DTPA when Defendants engaged in an unconscionable action or course of action that, to Plaintiffs' detriment, took advantage of Plaintiffs' lack of knowledge, ability, experience, or capacity to a grossly unfair degree. Specifically, Defendants **EK REAL ESTATE** and **EASYKNOCK** induced Plaintiffs **FELIX AND YOUNG** into entering into a "loan" transaction which was prohibited by law concerning their homestead knowing that neither Defendant was qualified as lenders with the Texas Office of Consumer Credit Commission to lend against Plaintiffs **FELIX AND YOUNG**'s homestead. Defendants **EK REAL ESTATE** and **EASYKNOCK** knew or should have known that **FELIX AND YOUNG** did not have the ability to pay back the loan on the onerous lending terms and rates and at charges that exceeded the maximum rates allowed by law.

52.   Defendants **EK REAL ESTATE** and **EASYKNOCK** violated the DTPA when Defendants engaged in false, misleading, or deceptive acts or practices that Plaintiffs relied upon to Plaintiffs' detriment and that violated a "tie-in" consumer statute, specifically § 41.006 of the Texas Property Code when Defendants induced Plaintiffs **FELIX AND YOUNG** into entering into a "Sale-leaseback" transaction on their homestead.

53.   **FELIX AND YOUNG** did not discover, and through the exercise of reasonable diligence could not have discovered, the occurrence of Defendants **EK REAL ESTATE** and **EASYKNOCK**'s false, misleading, and deceptive acts and practices until after the sale of the property and the lease agreement had been executed. **FELIX AND YOUNG** did not discover that

the title to the house was not in their names until **FELIX** registered her children for school during this school year.

54.     It was impracticable for Plaintiffs **FELIX AND YOUNG** to give Defendants **EASYKNOCK** and **EK REAL ESTATE** pre-suit written notice under Texas Business & Commerce Code § 17.505(a) ("DTPA") because Defendants **EASYKNOCK** and **EK REAL ESTATE** are threatening eviction, requiring immediate action. Therefore, pre-suit written notice was not required.

55.     Defendants' wrongful conduct was a producing cause of Plaintiffs' injuries which resulted in the following damages:

    a.     Plaintiffs seek unliquidated damages within the jurisdictional limits of this Court;

    b.     Defendants acted knowingly and intentionally which entitles Plaintiffs to recover mental-anguish damages under the Texas Business & Commerce Code § 17.50(b)(1) in an amount to be determined by the trier of fact;

    c.     Defendants acted knowingly and intentionally which entitles Plaintiffs to recover treble economic and mental anguish damages under the Texas Business & Commerce Code § 17.50(b)(1); and

    d.     Plaintiffs are entitled to recover reasonable and necessary attorney's fees for prosecuting this suit under Texas Business & Commerce Code § 17.50(d) in an amount to be determined by the trier of fact.

**USURY UNDER THE TEXAS FINANCE CODE**

56.     Plaintiffs **FELIX AND YOUNG** adopt all preceding paragraphs as if recited verbatim herein.

57.     On or about July 25, 2019, Defendants **EK REAL ESTATE** and **EASYKNOCK** loaned money to Plaintiffs **FELIX AND YOUNG** disguised as a "Sale-Leaseback" loan transaction. The loan between **FELIX AND YOUNG** and Defendants **EASYKNOCK** and **EK**

**REAL ESTATE**, in which **LENDINGONE** participated, only provided **FELIX AND YOUNG** with $57,396.75 in cash and another $32,075.96 to pay off obligations tied to the Property. Defendants **EK REAL ESTATE** and **EASYKNOCK** had the Property appraised to look like a $166,000.00 sale to them from **FELIX AND YOUNG**. From a purported sale of the Property for the sum of $166,000.00, Plaintiffs received a total value of $89,472.71. Disguised as a Termination Option Price on the HUD form, Defendants **EK REAL ESTATE** and **EASYKNOCK** took a $60,000.00 fee and other fees against the sales price.

58.     Plaintiffs **FELIX AND YOUNG** had an obligation to repay the principal amount of Defendants' loan as seen in the option to repurchase the Property.

59.     Defendants **EK REAL ESTATE** and **EASYKNOCK** contracted for and received interest that exceeded the maximum amount allowed by law by charging excessive fees including without limitation to the following:

        a.      Termination Option Price of $60,000.00;

        b.      Processing Fees of $2,415.00;

        c.      Lease Payments of $15,312.00 in the first year;

        d.      Lease Payments of at least $15,694.80 in the second year;

        e.      Lease Payments of at least $16,087.17 in the third year;

        f.      The difference between the amount received by Plaintiffs for (or were satisfied by) the loan of $89,472.71 and the repayment option of $111,300.00, if repurchased within the first twelve months, at least $114,082.50 if repurchased within twenty-four months and at least $116,934.56 if repurchased within thirty-six months plus closing costs and rents; and

        g.      Excessive closing costs.

60.     Defendants' unlawful conduct cause injury to Plaintiffs **FELIX AND YOUNG** which resulted in the following damages:

a.     Statutory Penalties; and

b.     Attorney's fees.

61.     Plaintiffs **FELIX AND YOUNG** seek unliquidated damages within the jurisdictional limits of this Court.

62.     Plaintiffs **FELIX AND YOUNG** are entitled to recover statutory penalties under Texas Finance Code § 305.001(a), that being the greater of the following:

a.     Three times the amount by which the interest contracted for, charged, or received exceeds the maximum amount of interest allowed by the usury statute; or

b.     $2,000.00 or 20% of the principal, whichever is less.

63.     In addition, since the interest charged and received under this contract exceeded twice the amount allowed by law, Plaintiffs **FELIX AND YOUNG** are seeking the forfeiture of all principal, interest and other amounts charged and received pursuant to Tex. Fin. Code § 305.002.

64.     Plaintiffs **FELIX AND YOUNG** are further entitled to recover reasonable attorney's fees under Texas Finance Code § 349.001 against Defendants **EK REAL ESTATE** and **EASYKNOCK**. Plaintiffs have hired the undersigned attorneys to represent their interests in this matter and have agreed to pay the attorneys a reasonable rate for their services. Plaintiffs **FELIX AND YOUNG** seek to recover their reasonable and necessary attorney's fees from Defendants, jointly and severally, in this matter in an amount as determined by the trier of fact.

### ADDITIONAL VIOLATIONS OF TEXAS FINANCE CODE GOVERNING LOANS AND FINANCED TRANSACTIONS §§ 341.011– 354.007, *et seq.*

65.     Plaintiffs **FELIX AND YOUNG** adopt all preceding paragraphs as if recited verbatim herein.

66.     At all times relevant hereto, **FELIX AND YOUNG** are considered "obligors" under the Texas Finance Code and Defendants **EASYKNOCK** and **EK REAL ESTATE**'s "Sale-Leaseback transaction is a "loan" under the Texas Finance Code. *See* Tex. Fin. Code § 341.001(9) and (10). This loan transaction was subject to the requirements of Texas Finance Code § 342.001, *et. seq.* (Consumer Loans) and § 343.001, *et seq.* (Home Loans).

67.     In connection with the loan transaction at issue in this case, Defendants **EASYKNOCK** and **EK REAL ESTATE** violated the Texas Finance Code, among other ways, by:

  a. engaging in the business of making, transacting, or negotiating loans subject to this chapter without holding a license issued under this chapter, Tex. Fin. Code § 342.051;

  b. failing to make required disclosures, Tex. Fin. Code § 343.102;

  c. failing to provide required notices, Tex. Fin. Code § 343.105; and

  d. engaging in a pattern or practice of extending credit to consumers under high-cost home loans based on the consumers' collateral without regard to the obligor's repayment ability, including the obligor's current and expected income, current obligations, employment status, and other financial resources, other than the obligor's equity in the dwelling that secures repayment of the loan, Tex. Fin. Code § 343.204.

68.     For violating these additional provisions of the Texas Finance Code, pursuant to Tex. Fin. Code. § 349.003, Defendants **EASYKNOCK** and **EK REAL ESTATE** are liable to **FELIX AND YOUNG** for (1) three times the actual economic loss to **FELIX AND YOUNG** that resulted from each violation; or, alternatively, (2) since each violation was material and induced **FELIX AND YOUNG** to enter into a transaction that they would not have entered if the violation had not occurred, twice the interest or time price differential contracted for, charged, or received, not to exceed $4,000 because the amount financed exceeds $5,000. Defendants are also liable for **FELIX AND YOUNG**'s reasonable attorney's fees in an amount to be determined by this Court.

## COMMON LAW AND STATUTORY FRAUD

69.     Plaintiffs **FELIX AND YOUNG** adopt all preceding paragraphs as if recited verbatim herein.

70.     Defendants **EASYKNOCK** and **EK REAL ESTATE** are liable to Plaintiffs for common law fraud, fraud by nondisclosure, fraudulent inducement, and, pursuant to Tex. Bus. & Com. Code § 27.0, statutory fraud.

71.     Specifically, as described throughout this Complaint:

a.     The Sale-Leaseback loan transaction is a transaction that involves real property in Texas, namely the Property.

b.     Defendants **EASYKNOCK** and **EK REAL ESTATE** made multiple misrepresentations, and they concealed or failed to disclose facts to Plaintiff despite a duty to do so.  Among other things, as described more specifically above, **EASYKNOCK** and **EK REAL ESTATE** falsely and misleadingly represented that they were authorized under Texas law to enter into the loan transaction that is the basis of this suit.

c.     Defendants repeatedly referred to the transaction as a "loan" and did not correct **FELIX** when she referred to it as a "loan." When **FELIX** asked questions about the "loan," Defendants answered her questions without correction about the structure of the transaction. At no point did Defendants describe the deal to include a sale of the Property. When discussing the option to get the Property back, Defendants described it only as "turning over" the Property back to **FELIX AND YOUNG**.

d.     Defendants made these misrepresentations and concealed/failed to disclose facts to induce Plaintiffs to enter into the Sale-Leaseback transaction for their Property.

e.     Defendants knew Plaintiffs were unaware of the concealed/undisclosed facts and did not have an equal opportunity to discover these facts. Defendants were deliberately silent when they had a duty to speak about the concealed/undisclosed facts.

f.     The representations and omissions were material and false.

g.   Defendants made these representations or omitted material facts with the intent that Plaintiffs rely on the representations or omissions.

h.   Plaintiffs relied on these representations and Defendants' nondisclosure.

i.   In relying on these representations and without the knowledge of the undisclosed facts, Plaintiffs **FELIX AND YOUNG** were injured.

72.   For the common law fraud claims, Plaintiffs seek and are entitled to recover, jointly and severally from Defendants **EASYKNOCK** and **EK REAL ESTATE,** their actual damages, exemplary damages, costs of court, and pre-and post-judgment interest.

73.   For their statutory fraud claims, Plaintiffs seek and are entitled to recover, jointly and severally from the Defendants **EASYKNOCK** and **EK REAL ESTATE**, their actual damages, and, pursuant to Tex. Bus. & Com. Code § 27.01(d) and (e), exemplary damages, attorneys' fees, expert witness fees, deposition-copy costs, costs of court, and pre-and post-judgment interest.

## **CONSPIRACY**

74.   Plaintiffs **FELIX AND YOUNG** adopt all preceding paragraphs as if recited verbatim herein.

75.   Defendants **EASYKNOCK**, **EK REAL ESTATE**, and **LENDINGONE** are liable to Plaintiffs **FELIX AND YOUNG** for participating in a conspiracy.

76.   Each of the Defendants was a member of a conspiracy. They conspired to commit acts of fraud and other statutory and common law torts, as described above. In so doing, the Defendants had a meeting of the minds to accomplish the wrongful acts described above, committed one or more acts in furtherance of the conspiracy to commit the unlawful causes of action described above and caused Plaintiffs actual harm as a result of their conspiratorial conduct.

77.     Accordingly, Plaintiffs are entitled to recover from each conspirator Plaintiffs' actual damages and exemplary damages, as well as for such conspirator's joint and several liability with the other actors concerning each cause of action described above. In connection, with the statutory torts, **FELIX AND YOUNG** are entitled to recover from each conspirator, jointly and severally, their attorneys' fees, expert witness fees, deposition-copy costs, costs of court, and pre- and post-judgment interest.

### AIDING AND ABETTING

78.     Plaintiffs **FELIX AND YOUNG** adopt all preceding paragraphs as if recited verbatim herein.

79.     Defendants **EASYKNOCK**, **EK REAL ESTATE**, and **LENDINGONE** are liable to Plaintiffs **FELIX AND YOUNG** for aiding and abetting one or more of the others in the conduct described in this Complaint.

80.     Specifically, as described throughout this Complaint:

    a.     Each Defendant committed torts;

    b.     Each Defendant had knowledge that these primary actors' actions constituted torts;

    c.     the Defendants had the intent to assist these primary actors in committing the torts;

    d.     each of the Defendants gave the primary actors assistance or encouragement; and

    e.     the assistance or encouragement provided by the Defendants was a substantial factor in causing the tort.

81.     Alternatively, as described throughout this Complaint:

    a.     the primary actors' activity accomplished a tortious result;

    b.     each of the Defendants provided substantial assistance to the primary actors in accomplishing the tortious result;

     c.      each of the Defendants' own conduct, separate from the primary actors', breached duties owed to Plaintiffs; and

     d.      the participation of each Defendant was a substantial factor in causing the tort.

82.    Plaintiffs are entitled to recover damages from each of the Defendants, jointly and severally, for each cause of action they aided & abetted.

## JURY DEMAND

83.    Plaintiffs **CRISTINA FELIX AND RONNELL YOUNG** demand trial by jury.

## CONCLUSION

Plaintiffs **CRISTINA FELIX AND RONNELL YOUNG** pray that the Court enter Judgment in favor of **CRISTINA FELIX AND RONNELL YOUNG** jointly and severally against Defendants **EK REAL ESTATE SERVICES OF NY, LLC**, an Affiliate of **EASYKNOCK, INC., EASYKNOCK, INC.,** and **LENDINGONE, INC.,** for the damages as set forth herein and for such other and further relief, in law or at equity, to which they may be justly entitled.

Dated: October 7, 2021

                                      Respectfully submitted,

                                        By:   /s/ Robin M. Ziek
                                            Robin M. Ziek
                                          Attorney at Law
                                          State Bar No.: 22262575
                                          24 Greenway Plaza, Suite 2050
                                          Houston, Texas 77046
                                          Telephone: (713) 222-8030
                                          Facsimile: (832) 565-9011
                                          rziek@sbcglobal.net

POGACH PLLC

By: _____/s/ Adam D. Pogach_____
    Adam D. Pogach
    State Bar. No.: 24048734
    24 Greenway Plaza, Suite 2050
    Houston, Texas 77046
    Telephone: (713) 524-5400
    Facsimile: (713) 524-5401
    adam@lawdifferent.com

FELDMAN & FELDMAN, P.C.

By: _____/s/ Cris Feldman_____
    Cris Feldman
    State Bar. No.: 24012613
    3355 W. Alabama St, 1220
    Houston, Texas 77098
    Telephone: (713) 986-9471
    Facsimile: (713) 986-9472
    cris.feldman@feldman.law

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By: _____/s/ Cory Halliburton_____
    Cory Halliburton
    State Bar. No.: 24041044
    3030 Matlock Rd., Suite 201
    Arlington, Texas 76015
    Telephone: (817) 795-5046
    Facsimile: (866) 248-4297
    challiburton@wkpz.com

**ATTORNEYS FOR CRISTINA FELIX AND RONNELL YOUNG**