# EXHIBIT B

Version 3.1

# **LEASE AGREEMENT**

This Lease (the "Agreement") is made on ___7/25/2019_____ between EK REAL ESTATE SERVICES OF NY, LLC a subsidiary of EASYKNOCK, INC., a Delaware corporation, with an address at 79 Madison Avenue, 4th Floor, New York, New York 10016 (the **"Landlord"**) and Cristina Felix, an individual(s) (the **"Tenant"**). Each of Landlord and Tenant shall be referred to herein as a "Party" and collectively, as the "Parties."

> WHEREAS, Landlord is the fee owner of certain real property being, lying and situated in Tarrant County, Texas such real property having a street address of 708 Dema Lane; BURLESON, Texas 76028 (the **"Property"**).

> WHEREAS, the Landlord has purchased the Property from the Tenant and the Parties wish for the Tenant to continue to occupy the Property subject to the terms and conditions of this Agreement.

> WHEREAS, as an inducement to Landlord to purchase the Property and as part of the consideration for the purchase and sale of the Property between the Parties, Tenant agrees to lease the Property from Landlord and Landlord agrees to grant to Cristina Felix, (the **"Option Holder"**) an option to effectuate the sale of the Property by Landlord to an another party, all upon the terms and conditions of this Agreement.

NOW, THEREFORE, for and in consideration of the covenants and obligations contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto hereby agree as follows:

## 1. RENT, LATE FEES AND ADDITIONAL EXPENSES.

a) **Rent**:  Tenant shall pay Landlord the annual rent of $15,312 during the Term (as defined in section 5), in monthly payments of $1,276 (the "Rent"), payable on the first (1st) day of each month in advance.

> **Rent Holdback**: At signing, Tenant shall pay $7,092 + ($3,000 Promotional Rent Reduction) of Rent in advance (the "Rent Holdback"), from which $591 + ($250 monthly promotion for one year) shall be used each month as a credit towards each monthly Rent payment (for example, the monthly rent of $1,276 shall be paid (a) $435 by Tenant, and (b) $591 from the Rent Hold-back + ($250 monthly for one year). Any unused portion of the Rent Holdback shall be applied to a subsequent Renewal Term, pursuant to section 5, and in the event Tenant exercises the Successor Purchaser Option, pursuant to section 6, any unused portion of the Rent Holdback shall be returned to Tenant.

**Late Fee**: A late fee of $100, or the maximum amount permitted by state law, provided such state law amount does not exceed $100, will be assessed if Rent is not received within five (5) days of the first (1st) day of each month in advance.

b) **Additional Expenses**: Subject to the further conditions of this Agreement, except for real estate taxes, owner's property insurance and homeowner's (or condominium owners') association dues, but excluding any assessments, and those expenses that are listed on Schedule A, as well as those expenses related to ordinary wear and tear and the warranty of habitability, pursuant to section 2(c), Tenant shall pay each and every other item of expense, for the payment of which Landlord is, shall or may be or become liable by reason of ownership of the property (**"Additional Expenses"**). Tenant agrees to indemnify and to hold Landlord harmless from and against the same.

i. **Payment**: Additional Expenses are payable on the first (1st) day of the month following the month in which such Additional Expenses were incurred, unless otherwise agreed to by Landlord in writing.

ii. **Schedule A**: Landlord and Tenant may, simultaneous with the execution of this Agreement, set forth and list items on Schedule A, which shall be made a part of the Agreement, in which Landlord or Tenant identifies building systems or other conditions with respect to the Property that are in need of repair or replacement, the cost of which shall be reduced from the Successor Purchaser Option Price payable to the Option Holder, or added to the Purchase Option Price payable to Landlord, pursuant to section 6(b).

c) **No Offset**: The Rent and Additional Expenses reserved herein shall be paid to Landlord net and without any claim on the part of Tenant for diminution, reduction, deduction, setoff or abatement and nothing shall suspend, abate or reduce any Rent to be paid hereunder.

**2. LANDLORD OBLIGATIONS.**

a) **Net Lease**: Except for real estate taxes, owner's property insurance and homeowner's (or condominium') association dues, but excluding any assessments, this is a net lease and Landlord shall not be required to provide any services or to do any act or thing with respect to the Property or the appurtenances thereto, except as specifically set forth in this Agreement.

b) **Payment Obligations**: Landlord shall pay (i) real estate taxes, (ii) homeowner's (or condominium) owner's association dues, but excluding any assessments,(iii) payments due with respect to liens and encumbrances placed on the Property by Landlord (other than any reciprocal easement agreements), unless same shall have been placed thereon as a result of a default of Tenant under this Agreement, (iv) income taxes and franchise taxes that are personal to Landlord,  (v) property insurance and (vi) the expenses referenced in section 2(c).

c) **Maintenance of Habitability**: The Landlord may, in its discretion, or upon the request of Tenant, repair or replace items necessary to maintain suitable standards of habitability.  Landlord is responsible for paying such expenses at the time they are incurred.  Any actual cost or expense incurred by the Landlord in repairing or replacing the same shall be reduced from the Successor Purchaser Option Price payable to the Option Holder, or added to the Purchase Option Price payable to the Landlord, pursuant to section 6(b). Landlord will be responsible for selecting the vendor that will complete the repair or replacement, provided such vendor's cost is reasonable in the context of the market within which Property is located.

d) **Non-disturbance**: Landlord covenants and agrees with Tenant that upon Tenant paying the Rent and Additional Expenses and observing and performing all the terms, covenants and conditions of this Agreement on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the Property, subject to the terms and conditions of this Agreement.

## 3. UTILITIES AND SERVICES.

During the Term, as defined in section 5 of this Agreement, Tenant shall, at its own expense, provide all utilities or services in or to the Property, and must pay promptly as they become due all charges relating thereto, including, without limitation, water, sewer, electricity, garbage service, cable, telephone, fuel, gas, heat, oil and other public utilities.  Landlord shall not be responsible for any utilities or services relating to the Property.

## 4. TENANT OBLIGATIONS.

a) **As-Is Condition**: Tenant acknowledges that Tenant is accepting the Property in its "as is, where-is" condition, subject to the items listed on schedule A,  and has had the opportunity to conduct their own inspection.

b) **Notification**: Tenant must promptly notify Landlord upon any observation or knowledge of any item requiring repair, any defective or dangerous condition, or any condition that otherwise affects the habitability of the Property.

c) **Maintenance of Property Condition and Repairs**: Tenant shall commit no waste to the Property and shall be responsible for all repairs and maintenance on the Property, except those repairs that affect the habitability of the property or are the result of ordinary wear and tear, pursuant to section 2(c).  For the avoidance of doubt, Tenant is not obligated to pay for any repairs or replacements to the extent the cost of such repairs or replacements has been covered by the proceeds from Landlord's insurance policy.  Tenant is not obligated to pay for repairs or replacements caused by natural disasters, including but not limited to earthquake, hurricane, tornado, hail, or in the case of war, action of foreign enemies, terrorist activities, or failure of electrical service, provided Tenant has promptly notified Landlord of Property damage from such, pursuant to section 4(b).

Tenant shall maintain all appliances, equipment, furniture, furnishings and other personal property included under this Agreement and, upon the surrender of the Property at the end of the Term, as defined in section 5 of this Agreement, or upon

the Option Expiration Date, as defined in section 6 of this Agreement, Tenant shall surrender Property to Landlord in the same condition as received, reasonable wear and tear excepted.  If Tenant defaults under the terms of this section, Landlord may make necessary repairs or replacements, the cost of which shall be considered Additional Expenses and payable as such by Tenant, pursuant to Section 1(b) of this Agreement.

d) **Alterations**: Tenant shall not make any structural or material alterations, additions, modifications and/or changes to the Property during the Term, without the prior written consent of the Landlord. Tenant may not construct or otherwise add any additional structures of any kind such as pools, hot tubs or trampolines.

e) **Subletting and Short Team Rentals**: Tenant may only sublet the Property to an immediate family member (e.g. son, daughter, grandson, or granddaughter), subject to Landlord's prior written consent.  Tenant may not list the Property on Airbnb or any platform that would allow Tenant to collect payment from someone using the Property.

f) **Additional Occupants**: Other than immediate family members (e.g. son, daughter, grandson, or granddaughter), Tenant shall not allow any other person to occupy the Property for more than ten (10) days per year, without Landlord's prior written consent, and providing further that it does not violate any governmental rules or regulations.

g) **Compliance with Law**: Tenant shall comply with all building, zoning and health codes and other applicable laws for the use of said Property.

h) **Tenant's Conduct**: Tenant shall not conduct any activity on the Property deemed hazardous, or a nuisance, or requiring an increase in insurance premiums or coverage.

i) **Right of Termination and Re-Entry**: If an Event of Default occurs, Landlord shall have full rights to terminate this Agreement and to re-enter and re-claim possession of the Property, subject to section 7(b)(v), in addition to such other remedies at law or equity available to Landlord arising from said breach, in accordance with the laws of the state and municipality in which the Property is located.

j) **Access to Property**: Upon reasonable notice, at reasonable times, Landlord may enter the Property to inspect, repair or to show it to prospective purchasers, tenants or lenders.  Tenant shall provide Landlord with keys to all locks for the Property. Tenant shall not change any locks or add any locks to the Property without obtaining Landlord's consent, and if given, Tenant shall provide keys to Landlord for these locks.

k) **Cooperation**: Throughout the Term, Tenant agrees to cooperate in listing and marketing the Property for sale as may be requested by Landlord.  Such cooperation will include allowing the Property to be listed for sale with a broker, subject to Landlord providing Tenant with notice of the same.

5. **TERM, OPTION EXERCISE PRICE & RENEWAL PERIOD INCREASES.**

a) **Initial Term**: Unless earlier terminated pursuant to the terms and conditions of this Agreement, the term of this Agreement shall commence on the first (1st) day of the month following the date this Agreement is signed by Tenant (the **"Initial Term"**). This Agreement shall expire at 11:59 PM on the date which is one (1) day prior to the date which is twelve (12) full months after the start date of the Initial Term.

b) **Renewal**: Provided that this Agreement is in full force and effect, no Event of Default remains uncured and all Rent and Additional Expenses have been paid current, Tenant shall have the option to renew this Agreement for additional one (1) year terms (each a **"Renewal Term"**, and together with the Initial Term, the "**Term**"), each commencing on the expiration of the immediately preceding Term or Renewal Term, as the case may be.  Tenant shall exercise each option to extend (i) the Initial Term, or (ii) any Renewal Term, by providing written notice to Landlord at least ninety (90) days, but in no event more than one hundred twenty (120) days prior to the expiration of the then-current Term.

c) **Option Exercise Price**: $111,300 shall be the Option Exercise Price.

d) **Renewal Period Increase**: Upon exercising an option to extend the Renewal Term, this Agreement shall continue under the same terms and conditions as the Initial Term, except that each year after the first year, the Option Exercise Price and the annual Rent for each Renewal Term, shall increase by the greater of:

    i. Two and One-Half percent (2.5%); or

    ii. An amount reflecting the increase in the cost of living as such increase, if any, is reflected by a change in the regional Index of all items in which the property is located for the "Consumers Price Index for all Urban Consumers" (**"Revised CPI U"**) published by the Bureau of Labor Statistics of the U.S. Dept. of Labor (collectively, the **"Consumer Price Index"** or **"CPI"**)(the **"Renewal Period Increase"**).

6. **SUCCESSOR PURCHASER OPTION.**

On or before the last day of the 36th month of the Term (if properly renewed as set forth in Section 5 of this Agreement) or the date which is one day prior to the expiration of the Term, whichever is earlier (the **"Option Expiration Date"**), the Option Holder shall have the option to terminate this Agreement and purchase the Property, or receive consideration from Landlord upon the sale by Landlord to another party (both a **"Successor Purchaser"**), both subject to the terms and conditions of this section 6 (collectively, the **"Successor Purchaser Option"**).

a) **Option Exercise & Notice**:

i. **Notice**: Option Holder may initiate exercise of the Successor Purchaser Option by delivering a written notice to the Landlord prior to the Option Expiration Date, pursuant to the notice requirements of section 19. If the Successor Purchaser is another party (i.e. not the Option Holder), the notice shall contain the terms of the proposed sale to the Successor Purchaser, including purchase price and the estimated Closing Date. If the Successor Purchaser is the Option Holder, the notice shall contain the estimated Closing Date.

ii. **Option Exercise**: The Successor Purchaser Option shall be deemed to be exercised upon the date of the closing of the sale and transfer of title to the Property (**"Closing Date**" or **"Option Exercise Date"**) by the Landlord to the Successor Purchaser (**"Option Exercise"**).

b) **Option Exercise Date Proceeds**:

i. **If Third Party**: On the Option Exercise Date, if the Successor Purchaser is not the Option Holder, the Option Holder shall receive:

**A**. the gross purchase price paid by the Successor Purchaser to Landlord; less

**B**. The Option Exercise Price of $111,300, subject to any relevant Renewal Period Increase(s) as set forth in section 5 of this Agreement; less

**C**. all closing costs paid by Landlord in respect to the transfer of title of the Property to the Successor Purchaser, including without limitation, real estate brokers' commissions, real property transfer taxes, attorneys' fees and filing fees, as well any prorations, as will be defined in the purchase agreement with the Successor Purchaser; less

**D**. all Rent and Additional Expenses due Landlord as of the Closing Date (the amount to be paid to the Option Holder as set forth in section 6(b)(i)(A) (D) is referred to herein as the **"Successor Purchaser Option Price"**)

ii. **If Option Holder**: On the Option Exercise Date, if the Successor Purchaser is the Option Holder, The Option Holder shall pay to the Landlord:

**A**. The Option Exercise Price of $111,300, subject to any relevant Renewal Period Increase(s) as set forth in section 5 of this Agreement; plus

**B**. all closing costs paid by Landlord in respect to the transfer of title of the Property to the Option Holder, including without limitation, real estate brokers' commissions, real property transfer taxes, attorneys' fees and filing fees, as well any prorations, as will be defined in the purchase agreement plus

**C**. all Rent and Additional Expenses due Landlord as of the Closing Date (the amount to be paid by the Option Holder as set forth in this section 6(b)(ii)(A)-(C) is referred to herein as the **"Purchase Option Price"**).

**Landlord does not guarantee, and it does not represent or warrant that Option Holder shall receive any certain Successor Purchaser Option Price.**

Successor Purchaser Example #1 (if Third Party): By way of example only, if the Option Exercise Price is $200,000, and the Landlord sells the Property to a non-Tenant Successor Purchaser for the sum of $375,000 prior to the Option Expiration Date and Landlord incurs closing costs totaling $20,000, the Successor Purchaser Option Price payable to Option Holder would be $155,000 ($375,000 purchase price paid by Successor Purchaser to Landlord, less $200,000 Option Exercise Price, less $20,000 closing costs).

Successor Purchaser Example #2 (if Option Holder): By way of example only, if the Option Exercise Price is $200,000, and Option Holder desires to purchase the Property from Landlord prior to the Option Expiration Date, and Landlord incurs closing costs totaling $1,000, the amount Option Holder shall be required to pay Landlord at the closing of the transfer of title to Option Holder for the Purchase Option Price would be a total of $201,000 ($200,000 Option Exercise Price, plus $1,000 closing costs).

c) **Additional Option Terms**:

i. **Successor Purchaser Option Protection**: The Successor Purchaser Option will expire on 11:59 PM on the Option Expiration Date. Following the Option Expiration Date, Landlord may elect to sell the Property under the Option Settlement Procedure, pursuant to section 7(b)(v).  For the avoidance of doubt, if an Option Exercise does not occur, Option Holder is still entitled to receive the Successor Purchaser Option Price at such time as the Option Settlement Procedure is exercised by Landlord.

ii. **Responsibilities**: Except upon an Event of Default or after the Option Expiration Date, it shall be the sole responsibility of the Option Holder to procure a Successor Purchaser for the Property, pursuant to section 6(a). Landlord is responsible for cooperating with the Option Holder as it relates to the sale of the Property to a Successor Purchaser.The Tenant has the obligation to make the Property available for showings. Subject to Landlord's written approval, which may not be unreasonably withheld, Option Holder may list the Property with a broker of their choosing.

iii. **Option Payment Timing and Calculation**: The Successor Purchaser Option Price to be paid to Option Holder shall be calculated as of the closing of the transfer of title to the Property and shall be paid to Option Holder within five (5) days after Landlord has confirmed the Property has been vacated by Tenant.  If the Option Holder is the purchaser of the Property, all amounts due from Option Holder to Landlord for the Purchase Option Price shall be payable upon the transfer of title to the Property to the Option Holder.

iv. **Escrow**: On the Closing Date, if the Successor Purchaser is not the Option Holder, the Successor Purchaser Option Price shall be paid by Landlord into an escrow account designated by Landlord.  Payment of the Successor Purchaser

Option Price shall be made to Option Holder within five (5) business days after Landlord has confirmed that the Property is vacant, and Tenant is no longer in possession of the Property.

v. **Agreement Termination**: If the Option exercises the Successor Purchaser Option, or the Property is sold by Landlord, pursuant to section 7(b)(v), this Agreement shall expire on the Closing Date and all rights and obligations of the Parties shall terminate as of the Closing Date, except those which expressly survive termination of this Agreement.

## 7. DEFAULT & REMEDIES

a) **Default**: Landlord shall give written notice to Tenant, according to the time period and procedure required by state law, if any to correct any of the following defaults (each, an **"Event of Default"**):

**i**. Failure to pay Rent or Additional Expenses on time;

**ii**. Improper assignment of the Agreement, improper subletting of all or part of the Property, or allowing another to use the Property without Landlord's written consent;

**iii**. Improper conduct by Tenant or other occupant of the Property;

**iv**. Failure of Tenant to deliver vacant possession of the Property, pursuant to the terms and conditions of this Agreement; or

**v**. Failure to fully perform any other term or obligation in this Agreement.

b) **Remedies Upon Default**:

**i**. Tenant shall have five (5) days, or the notice period required by state law if longer, after Landlord gives written notice to cure an Event of Default.

**ii**. If Tenant fails to cure an Event of Default within five (5) days, or the notice period specified by state law if longer, after such written notice, then in addition to any other remedies available to Landlord at law or in equity, Landlord may terminate this Agreement by giving written notice of the termination.

**iii**. If Tenant fails to cure an Event of Default within five (5) days, or the notice period specified by state law if longer, after such written notice, then in addition to any other remedies available to Landlord at law or in equity, Tenant shall be deemed to have exercised his, her or its Successor Purchaser Option.

**iv**. If this Agreement is terminated or Tenant vacates the Property prior to the end of the Term, Landlord may enter the Property and remove Tenant and any person or property and/or commence summary proceedings for eviction, subject and pursuant to state law governing such.  The aforesaid actions are not the sole remedies of Landlord. If this Agreement is cancelled or Landlord takes back the Property, any cost or repair expended by Landlord shall be the obligation of Tenant and shall be deemed Additional Expenses.

**v**. Option Settlement Procedure: If this Agreement is terminated due to an Event of Default or Tenant's failure to exercise the Successor Purchaser Option on or before the Option Expiration Date, the Tenant shall lose entitlement to any refund of Rent

or option consideration; provided, however, that Tenant shall be entitled to receive the Successor Purchase Option Price if the Property is sold to a Successor Purchaser, less any and all fees, costs and expenses incurred by Landlord, including, without limitation, those court and attorney's fees incurred with respect to dispossessing Tenant from the Property (the **"Option Settlement Procedure"**). To effect the Option Settlement Procedure, Landlord shall be entitled to sell the Property in any manner in its sole discretion, including, without limitation, listing and selling the Property through an online auction platform, such as ten-x.com, and all fees associated therewith shall reduce the Successor Purchaser Option Price by such amount.

**8. LIABILITY.**

Landlord shall not be liable for any loss, damage or expense to any person or property except if such loss is caused by the willful acts of Landlord.  Tenant shall be liable for the acts of Tenant, Tenant's family, guests and/or invitees.  Landlord's cost and expense in repairing any such damage or from any claim resulting from such acts shall be billed as Additional Expenses and shall be paid by Tenant to Landlord as specified in section 1(b). If more than one Tenant is named, then such liability shall be joint and several.

**9. COMMISSION.**

No real estate commissions or any other commissions shall be paid in connection with this transaction.  Each Party indemnifies the other from claims for brokerage commissions asserted by any third-party claiming a commission for work done on behalf of the indemnifying Party.

**10. RECORDING OF AGREEMENT.**

Tenant shall not record this Agreement on the public records of any public office without the express and written consent of Landlord. The written consent requirement under this section is waived in the event of Landlord bankruptcy or dissolution.

**11. ACKNOWLEDGMENTS.**

The Parties are executing this Agreement voluntarily and without any duress or undue influence. The Parties have carefully read this Agreement and have asked any questions needed to understand its terms, consequences, and binding effect and fully understand them and have been given an executed copy. The Parties have sought the advice of an attorney of their respective choice, if so desired, prior to signing this Agreement.

**12. INABILITY TO PERFORM.**

If Landlord is unable to perform any of its obligations to be performed hereunder due to governmental orders, labor strife or inability to secure goods or materials, through no fault on the part of Landlord, this Agreement shall not be terminated or cancelled and such inability shall not impact upon Tenant's obligations hereunder.

**13. SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT.**

a) **Subordination**: This Agreement is automatically subject and subordinate to the lien, provisions, operation and effect of all mortgages, deeds of trust, ground leases or other security instruments which may now or hereafter encumber the Property (collectively, **"Mortgages"**), to all funds and indebtedness intended to be secured thereby, and to all renewals, extensions, modifications, recastings or refinancings thereof.  The holder of any Mortgage to which this Agreement is subordinate shall have the right (subject to any required approval of the holders of any superior Mortgage) at any time to declare this Agreement to be superior to the lien, provisions, operation and effect of such Mortgage and Tenant shall execute, acknowledge and deliver all documents required by such holder in confirmation thereof.

b) **Acknowledgement of Subordination**: Tenant shall, within ten (10) business days after Landlord's request, execute and deliver any requisite or appropriate document confirming the foregoing subordination.  If Tenant fails timely to do so, then Tenant appoints Landlord as Tenant's attorney-in-fact to execute any such document for Tenant.  Tenant waives the provisions of any statute or rule of law now or hereafter in effect which may give or purport to give Tenant any right to terminate or otherwise adversely affect this Lease and Tenant's obligations hereunder in the event any foreclosure proceeding is prosecuted or completed or in the event the Property or Landlord's interest therein is transferred by foreclosure, by deed in lieu of foreclosure or otherwise.

c) **Survivorship and Non-Disturbance**: So long as Tenant pays the Rent and Additional Expenses, and there exists no Event of Default(s) under any terms of this Agreement, Tenant may peacefully occupy the Property during the Term.  Tenant's rights under this Agreement shall survive an assignment of this Agreement, or an involuntary transfer of title by Landlord, including any transfer caused by bankruptcy or dissolution of Landlord.

d) **Attornment**: At the request of such transferee, Tenant shall attorn to such transferee and shall recognize such transferee as the landlord under this Lease, provided such transferee agrees to assume Landlord's obligations under this Agreement arising from and after the date of the transfer.  Tenant agrees that upon any such attornment, such transferee shall not be (i) bound by any payment of the Rent or Additional Expenses more than one (1) month in advance, except prepayments in the nature of security for the performance by Tenant of its obligations under this Agreement, but only to the extent such prepayments have been delivered to such transferee, (ii) bound by any amendment of this Agreement unless expressly permitted or required by this Lease or consented to by such then present holder of such Mortgage (if and to the extent such consent is required by the terms of such Mortgage), (iii) liable for damages for any breach, act or omission of any prior landlord, or (iv) subject to any offsets or defenses which Tenant might have against any prior landlord; provided, however, that after succeeding to Landlord's

interest under this Agreement, such transferee shall agree to perform in accordance with the terms of this Agreement all obligations of Landlord arising after the date of transfer.  Within five (5) days after the request of such transferee, Tenant shall execute, acknowledge and deliver any requisite or appropriate document submitted to Tenant confirming such attornment.

e) **Estoppel**: Tenant, upon at least ten (10) days' prior notice by the Landlord, shall execute, acknowledge and deliver to the Landlord, and/or to any other person, firm or corporation specified by the Landlord, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), stating the dates to which the annual Rent and Additional Expenses have been paid, stating whether or not there exists any default by the Landlord under this Agreement, and, if so, specifying each such default, and any other matters reasonably requested by the Landlord or the recipient.

f) **Request for Modification**: If any prospective or current holder of a Mortgage or transferee requires that modifications to this Agreement be obtained, and provided that such modifications (i) are reasonable, (ii) do not adversely affect Tenant's use of the Property as herein permitted, and (iii) do not unreasonably increase Tenant's obligations hereunder or increase the Rent and other sums to be paid by Tenant, then Landlord may submit to Tenant an amendment to this Agreement incorporating such required modifications, and Tenant shall execute, acknowledge and deliver such amendment to Landlord within five (5) days after Tenant's receipt thereof.

g) **Assignment to Mortgage Holder**: If (i) the Property is at any time subject to a Mortgage, (ii) this Agreement and Rent payable hereunder is assigned to the holder of the Mortgage, and (iii) the Tenant is given written notice of such assignment, including the name and address of the assignee, then, Tenant shall not terminate this Agreement or make any abatement in the Rent payable hereunder for any default on the part of the Landlord without first giving notice, in the manner provided elsewhere in this Agreement for the giving of notices, to the holder of such Mortgage, specifying the default in reasonable detail, and affording such holder a reasonable opportunity to make performance, at its election, for and on behalf of the Landlord, except that, (A) such holder shall have at least thirty (30) days to cure the default; (B) if such default cannot be cured with reasonable diligence and continuity within thirty (30) days, such holder shall have any additional time as may be reasonably necessary to cure the default with reasonable diligence and continuity; and (C) if the default cannot reasonably be cured without such holder having obtained possession of the Property, such holder shall have such additional time as may be reasonably necessary under the circumstances to obtain possession of the Property and thereafter to cure the default with reasonable diligence and continuity.  If more than one such holder makes a written request to Landlord to cure the default, the holder making the request whose lien is the most senior shall have such right.

**14.  NON-WAIVER.**

Any failure by Landlord to insist upon Tenant's full compliance with the terms of this Agreement and/or to enforce such terms shall not be deemed to be a waiver of Landlord's rights to insist upon or so enforce the terms of this Agreement at a future date.

**15. TIMING.**

Time is of the essence in this Agreement.

**16. INSURANCE, INDEMNITY, FIRE AND CASUALTY.**

a) **Renters Insurance**: From and after the date of this Agreement, Tenant shall keep, at his, her or its sole cost and expense, all of its furniture, fixtures, and personal property (including also property under the care, custody or control of Tenant) which may be located in, upon or about the Property insured for the benefit of Tenant in an amount equivalent to the full replacement value or insurable value thereof against:(i) loss or damage by fire; and (ii) such other risk or risks of a similar or dissimilar nature as are now, or may in the future be, customarily covered with respect to a tenant's furniture, fixtures, and personal property in a property building similar in construction, general location, use, occupancy and design to the Property, including, but without limiting the generality of the foregoing, windstorms, hail, explosions, water damage, vandalism, theft, malicious mischief, civil commotion and such other coverage as Tenant may deem appropriate or necessary.

b) **Waiver of Subrogation**: Tenant agrees that such policy or policies of insurance shall contain a waiver of subrogation clause as to Landlord, and, anything in this Agreement to the contrary notwithstanding, Tenant waives, releases and discharges Landlord from all claims or demands whatsoever which Tenant may have or acquire arising out of damage to or destruction of the furniture, fixtures, and personal property of Tenant occasioned by fire or other cause, whether such claim or demand may arise because of the negligence or fault of Landlord and its agents, contractors, servants, employees, licensees or otherwise, provided, however, to the extent any such damage to or destruction of such property of Tenant is caused by the negligence or willful misconduct of Landlord or its agents, contractors, servants, employees, licensees and all or any portion of such loss is "deductible", then Landlord shall pay to Tenant the amount of such deductible loss (not to exceed $10,000 per event).  Except with respect to any deductible loss, as aforesaid, Tenant agrees to look to the insurance coverage only in the event of such loss.

c) **Landlord's Insurance Proceeds**: Landlord may maintain, for its benefit, commercial general liability insurance against claims for personal injury, death or property damage occurring upon, in or about the Property, such insurance to afford protection to Landlord. Tenant shall have no rights in or to any insurance proceeds received or obtained by Landlord as a result of a casualty or loss, except that Tenant shall be entitled to any insurance proceeds received or obtained which exceed the Option Exercise Price, after Landlord has been repaid for all of its fees and expenses, including attorneys' fees, incurred in obtaining such proceeds.  By way of example only, if the Option Exercise Price is $200,000, and Landlord receives $300,000 in insurance proceeds for a casualty or loss, but Landlord has spent $20,000 to recover such sum, then Tenant shall be entitled to a payment of $80,000 ($300,000 insurance proceeds, less $200,000 Option Exercise Price, less $20,000 closing costs). Notwithstanding the foregoing, if the casualty or loss or damage to or destruction of the Property is caused in whole or in part by

the negligence or willful misconduct of the Tenant, its agents, servants, employees, guests and/or invitees, then Tenant shall not be entitled to any proceeds of insurance as set forth in this section 16.

d) **Fire & Casualty**: In the case of fire damage or other damage to the Property, Tenant shall give Landlord immediate written notice of same.  Upon receipt of such notice, Landlord may either (i) repair the Property, or (ii) terminate the Agreement as follows:

    i. **Repair**: If Landlord opts to repair the Property, Landlord shall have a reasonable time in which to do so.  If the damage to the Property renders the Property uninhabitable, Landlord shall give notice to Tenant, after repairs are made, of the date on which the Property may be reoccupied.  Rent for the period that Tenant cannot occupy the Property because of the damage shall be abated until the date which Tenant can re-occupy the Property.

    ii. **Termination**: In the event that Landlord terminates this Agreement due to such damage, and subject to any right of Tenant, pursuant to section 16(c) of this Agreement, Landlord shall give Tenant thirty (30) days' notice of Landlord's intent to so terminate, in which event, Rent shall be due for the period up to the date the Property incurred the damage. Upon the determination of the Landlord to terminate this Agreement, Landlord shall have the sole and exclusive option to transfer title of the Property directly to Tenant, or sell the Property to a third-party, whereupon Tenant shall be entitled to receive an amount equal to the Successor Purchaser Option Price.

e) **Indemnification**: Notwithstanding the limits of insurance specified in this section 16, Tenant agrees to indemnify Landlord against all claims asserted against the Landlord arising out of Tenant's occupancy of the Property, including but not limited to, any claim of negligence all damage, loss or liability, including attorneys' fees, to the extent Tenant, its agents, servants, employees, guests and/or invitees causes Landlord any damages as a result of such risks.  Such indemnification shall operate whether or not Tenant has placed and maintained the insurance specified in this section, and whether or not such insurance, having been placed and maintained, proceeds from such insurance, actually are collectible from one or more of the insurance companies; provided, however, that Tenant shall be relieved of its obligation of indemnity herein pro tanto of the amount actually recovered from one or more of the insurance companies by reason of injury or damage to, or loss sustained on the Property.

## 17. MECHANIC'S LIENS.

It is agreed that should Tenant cause any alterations, changes, additional improvements or repairs to be made to the Property, or material furnished or labor performed therein or thereon, neither Landlord nor the Property shall, under any circumstances, be liable for the payment of any expenses incurred or for the value of any such work done or material furnished to the Property or any part thereof; but all such alterations, changes, additions, improvements and repairs and materials and labor shall be at Tenant's expense, and Tenant shall be solely and wholly responsible to contractors, laborers and materialmen furnishing labor and material to the Property and building, or any part thereof for or on behalf of Tenant. Tenant shall not suffer or permit any mechanic's liens to be filed against the fee ownership of the Property nor against Tenant's leasehold interest in the Property, by

reason of work, labor, services or materials supplied or claimed to have been supplied to Tenant or to any occupant of the Property.  If any such mechanic's lien shall at any time be filed against the Property or the building and improvements thereon, Tenant shall, at its own cost and expense, cause the same to be cancelled and discharged of record by surety bond or appropriate cash deposit within twenty (20) days after the date of filing the same and notice thereof to Tenant, and Tenant shall indemnify and save harmless Landlord from and against any and all costs, expenses, claims, losses or damages resulting from the aforesaid mechanic's liens, if any.

**18. HOLDOVER.**

If Tenant shall remain in the Property for any reason after the termination of this Agreement, Tenant shall be deemed a month-to-month Tenant at a monthly rental equal to Two Hundred (200%) percent of the Rent due in the month of the termination, or the maximum allowed by state law, whichever is less.  Notwithstanding the above, Landlord shall not be required to accept Tenant's month-to-month tenancy and may at any time during such holdover period evict the Tenant.

**19. NOTICES.**

Any notice or demand which, under the terms of this Agreement or under any statute must or may be given or made by the Parties shall be in writing, and shall be given or made by (i) hand, (ii) overnight courier service, next business day delivery (iii) made by certified mail, return receipt requested, to the addresses set forth below (or in each case to such other address as shall have last been furnished by like notice) or (iv) electronic mail, with proof or confirmation of delivery.  Each notice or communication shall be deemed to have been given as of the date so mailed or delivered as the case may be, except in the case of e-mail,  which will be will be deemed delivered and given for all purposes on the sent date, but only if the receiving party has confirmed its receipt by return e-mail.

Notices by the means identified in this section 19 shall be given to:

| | | **To the Landlord:** |
|---|---|---|
| | | EK REAL ESTATE SERVICES OF NY, LLC<br>c/o Benjamin Black, EasyKnock, Inc.<br>79 Madison Avenue, 4th Floor<br>New York, New York 10016<br>Attn: Notice Administrator<br><br>Or<br><br>tenant@easyknock.com |
| | **To the Tenant:** | |
| | | Cristina  Felix<br>708 Dema Lane<br>BURLESON,  Texas  76028           (321) 662-2978<br><br>Or<br><br>cruzvi2693@yahoo.com |

**20. GOVERNING LAW AND VENUE.**

This Agreement shall be governed, construed and interpreted by, through and under the laws of the state in which the Property is located, without regard to that state's conflicts of laws principles.

**21. ARBITRATION.**

a) **Arbitration Requirement**: Except as provided below OR UNLESS TENANT SUBMITS A VALID ARBITRATION/CLASS ACTION WAIVER OPT-OUT NOTICE (AS DESCRIBED BELOW), any and all claims (each, a "Claim") between Tenant and Landlord will be resolved in binding arbitration rather than in court.  Tenant and Landlord agree to submit to individual arbitration the resolution of any and all claims) by or between Tenant and Landlord, except that Tenant and Landlord agree that binding arbitration will not apply to Landlord seeking a preliminary injunction, restraining order or other provisional equitable relief in any court whereby Landlord may suffer immediate and irreparable harm for which money damages may be inadequate and impossible to calculate (including, but not limited to, a Claim where such Claim will not be subject to the informal dispute resolution procedures described in section); provided, however, that, subsequent to obtaining such preliminary injunction, restraining order or other provisional equitable relief, the Claim will then be submitted to arbitration in accordance with this section 21. Tenant and Landlord agree that this Agreement affects interstate commerce, and that the enforceability of this section will be governed by, construed, and enforced, both procedurally and substantively, by the Federal Arbitration Act, 9 U.S.C. sections 1–9. Any arbitration will be administered by the American Arbitration Association ("AAA") pursuant to its then current Commercial Arbitration Rules (the "AAA Rules"), as modified by the terms set forth in this section 21.

b) **Arbitration Procedure**: Any arbitration initiated by Tenant or Landlord shall be initiated in New York, New York. The AAA Rules, and other information about the AAA, are available at the AAA's website at www.adr.org. A form for initiating arbitration proceedings is available on the AAA's website (https://www.adr.org, but contact the AAA if you have an issue accessing this link) and arbitration proceedings shall be initiated in the location described in this section. As required by the AAA Rules, if Tenant initiates the arbitration proceedings, Tenant must send the original copy of the completed form to Landlord. If the Claim is for $10,000 or less, Tenant may choose whether the arbitration will be conducted solely based on documents submitted to the arbitrator, through a telephonic hearing, or by an in-person hearing under the AAA Rules. In all cases, Tenant and Landlord shall exchange documents and other information that Tenant and Landlord intend to use in the arbitration. The Parties shall select one (1) arbitrator by mutual agreement. Unless Tenant and Landlord mutually agree otherwise, the arbitrator shall be an attorney licensed to practice in the location where the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted. If the Parties cannot agree on an arbitrator, then an arbitrator will be selected using the alternate strike method from a list of five (5) neutral arbitrators provided by AAA. Tenant will have the option of making the first strike.

c) **Class Action Waiver**: UNLESS TENANT SUBMITS A VALID ARBITRATION/CLASS ACTION WAIVER OPT-OUT NOTICE (AS DESCRIBED IN THIS SECTION), TENANT AND LANDLORD AGREE THAT ANY DISPUTE RESOLUTION PROCEEDINGS WHETHER IN ARBITRATION OR IN COURT WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS, CONSOLIDATED OR REPRESENTATIVE ACTION. Tenant and Landlord expressly agree that any Claim is personal to Tenant and Landlord, shall only be resolved by an individual arbitration (or individual court proceedings with respect to Claims excluded from mandatory arbitration as described in this section 21), and shall in no event be brought as a class

arbitration, a class action, or any other representative proceeding. The arbitrator (or court if the Claim is excluded from mandatory arbitration as described in this section 21) may only conduct an individual arbitration (or court action if the Claim is excluded from mandatory arbitration as described in this section 21), and may not consolidate more than one person's claims and may not preside over any form of representative or class proceeding. If a court or arbitrator determines that this class action waiver is unenforceable in an action between Tenant and Landlord, then the agreement to arbitrate set forth in this section 21 of this Agreement will be unenforceable. Neither Tenant nor Landlord consent to class arbitration.

d) **Opt-out**: Arbitration is not a mandatory condition of your contractual relationship with Landlord. If Tenant does not want to be subject to the arbitration provision set forth in this section 21, Tenant may opt out of the arbitration provisions by notifying Landlord, in writing, of Tenant's intent to opt out of the arbitration provision, either by (a) sending, within thirty (30) days of the date of this Agreement, electronic mail to leaseadmin@easyknock.com, stating Tenant's name and intent to opt out of the arbitration provision set forth in this section 21, or (b) by sending a letter by certified U.S. Mail, return receipt requested, or by any nationally recognized delivery service (e.g, UPS, Federal Express, etc.), or by hand delivery to Landlord's address, set forth in section 19 of this Agreement. In order to be effective, the letter must clearly indicate Tenant's intent to opt-out of the arbitration provision set forth in this section 25, and must be dated and signed. The envelope containing the signed letter must be post-marked within thirty (30) days of the date this Agreement is executed by you. Tenant's writing opting-out of the arbitration provision, whether sent by (a) or (b) above, will be filed with a copy of this Agreement and maintained by Landlord. Should you not opt-out of the arbitration provision set forth in section 21 within the thirty (30) day period, Tenant and Landlord shall be bound by the terms of the arbitration provision set forth in this section 21. Tenant has the right to consult with counsel of his, her or its choice concerning the arbitration provision set forth in this section 21. Tenant understands that Tenant will not be subject to retaliation if Tenant exercises his, her or its right to assert claims or opt-out of coverage under the arbitration provision set forth in this section 21.

## 22. TAX AND LEGAL MATTERS.

Tenant understands that Tenant may suffer adverse legal and tax consequences as a result of Tenant's sale, disposition and/or leasing of the Property. Tenant represents that Tenant has consulted with any tax or legal consultants Tenant deems advisable in connection with the sale, disposition and/or leasing of the Property and that Tenant has not received any legal or tax advice from Landlord or any of its representatives with respect the transactions contemplated hereby.

## 23. DEATH OF TENANT.

If at any time during the Term, upon death of the Tenant, this Agreement, passes by will or intestate distribution to any person or persons not exceeding three (3) in number (or if to more than three (3) in number, this Agreement passes by assignment among themselves to co-legatees or co-distributees not exceeding three (3) in number), then the legatees or distributees may, by

assuming the terms of this Agreement in writing within two (2) months after the Tenant's death, become the Tenant under this Agreement, without, however, releasing the estate of the deceased Tenant from any liability or obligations under this Agreement.

**24. ASSIGNABILITY.**

Landlord has the right to freely assign its rights and obligations under this Agreement.

**25. AGREEMENT CONTROLS.**

In the event a conflict arises between the terms and conditions of this Agreement and the underlying contract of sale between Tenant and Landlord for Landlord's purchase of the Property, and subject to state law, the terms of this Agreement shall control.

**26. ENTIRE AGREEMENT; MODIFICATION.**

This document sets forth the entire agreement and understanding between the Parties relating to the subject matter herein and supersedes all prior discussions between the Parties. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the Party to be charged.

(SIGNATURE PAGES TO FOLLOW)

IN WITNESS WHEREOF, Landlord and Tenant have respectively signed this Agreement as of the day and year first above written.

**LANDLORD'S SIGNATURE:**

EK REAL ESTATE SERVICES OF NY, LLC, or its assignee

By:  *Benjamin Black*

Name: Benjamin Black

Title: Chief Operating Officer

**TENANT'S SIGNATURE:**

By:  *Cristina Felix*

Name:  Cristina  Felix

# SCHEDULE "A"

**LIST OF REPAIRS/REPLACEMENTS REQUESTED BY TENANT, THE COST OF WHICH SHALL BE REDUCED FROM PAYMENT OF ANY TERMINATION OPTION PRICE**

| AREA OF PROPERTY | DESCRIPTION OF REPAIR/REPLACEMENT |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

As a result of my/our inspection, please be advised that except as otherwise noted, I/we are not requesting the Landlord repair or replace any item, fixture, building system or equipment in the Property.I/we understand and agree that we are taking the Property "as is, where is" and subject to the terms and conditions of the Agreement.

**TENANT SIGNATURE:**  *Cristina Felix*                    **Date:**  08/27/2020

## EXHIBIT "A"

## ACKNOWLEDGEMENT OF RECEIPT OF SUCCESSOR PURCHASER OPTION PRICE

**ACKNOWLEDGEMENT OF RECEIPT OF SUCCESSOR PURCHASER OPTION PRICE**

Date:_____
Address of Property:_____
Amount of Successor Purchase Option Price Received:$_____

    I/We have been paid a total of $_____, in full payment of the Successor Purchaser Option Price, which is defined in the Lease with Tenant Option Agreement ("Lease"), dated _____, between me/us and EK REAL ESTATE SERVICES OF NY, LLC an affiliated entity of EASYKNOCK, INC. ("EasyKnock").  Upon receipt of the amount of $_____, I/we acknowledge that EasyKnock has paid the full and total amount of the Successor Purchaser Option Price due to me/us under the Lease and no further amounts are due and owing to me/us from EasyKnock.

    In consideration of my/our receipt of the Successor Purchaser Option Price, I/we release and give up all claims and rights that I/we may have against EasyKnock, its affiliates, successors, assigns, employees, agents, attorneys, officers, directors, shareholders, members, or managers. This releases all claims, including those of which I/we am/are not aware of and those not mentioned in this acknowledgement and release. This acknowledgement and release applies to claims resulting from anything which has happened up to now, including, without limiting the generality of the foregoing, any and all claims whether asserted or unasserted, whether known or unknown.

    I/we understand and agree to the terms of this acknowledge and release.

**TENANT'S SIGNATURE:**      **TENANT'S SIGNATURE:**
_____    _____
Print Name:_____    Print Name:_____

STATE OF _____)
               )ss.:
COUNTY OF _____)

    On the __ day of _____ 201_, before me, the undersigned personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and Office of
individual taking acknowledgment

## EXHIBIT "B"

## ACKNOWLEDGMENT OF TERMS OF AGREEMENT WITH SUCCESSOR PURCHASER

**ACKNOWLEDGEMENT OF TERMS OF AGREEMENT WITH SUCCESSOR PURCHASER**

Date: _____

Address of Property:_____

Date of Contract of Sale with Successor Purchaser:_____

    I/We acknowledge that either I/we, or my/our duly authorized representative, have/has examined the above-referenced contract of sale, which is attached hereto as Exhibit "A", whereby EK REAL ESTATE SERVICES OF NY, LLC an affiliated entity of EASYKNOCK, INC. ("EasyKnock"), or another entity affiliated with EasyKnock, is selling the above-referenced property to _____ (the "Contract of Sale").

    I/We further acknowledge that I/we agree and accept the terms and conditions set forth in the Contract of Sale, including, without limitation, those terms relating to the purchase price, the identify of the purchaser, the identify of the seller, the identify of the broker, and all other conditions or contingencies set forth therein.

**TENANT'S SIGNATURE:**        **TENANT'S SIGNATURE:**

_____    _____

Print Name:_____    Print Name:_____

STATE OF _____ )
                      )ss:.
COUNTY OF _____ )

    On the __ day of _____ 201_, before me, the undersigned personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and Office of
individual taking acknowledgment

**EXHIBIT "A" TO ACKNOWLEDGEMENT OF TERMS**
**OF AGREEMENT WITH SUCCESSOR PURCHASER**

**COPY OF EXECUTED CONTRACT OF SALE**

Document Ref: 7N8NA-B8QZJ-ZHIAE-SWTRF

EXHIBIT "C"

FORM OF TERMINATION NOTICE

## <u>LEASE TERMINATION NOTICE</u>

**OVERNIGHT COURIER SERVICE, NEXT BUSINESS DAY DELIVERY or
CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

To: EasyKnock, Inc.
    79 Madison Avenue, 5th Floor
    New York, New York 10016
    Attn: Notice Administrator

Date: _____
Address of Property: _____

    Please take notice that I/we, in accordance with the terms
set forth in the Lease with Tenant Option Agreement ("Lease"),
dated _____, between me/us and EK REAL ESTATE
SERVICES OF NY, LLC an affiliated entity of EASYKNOCK, INC.
("EasyKnock"), have/has elected to exercise his/her/their Option
to Terminate, as such term is defined in the Lease.

    By copy of this notice, I/we agree to cooperate with any
broker or authorized representative of EasyKnock in the listing
and marketing of the above-referenced property for sale,
including, without limitation, providing access to any
prospective purchaser.

**TENANT'S SIGNATURE:**        **TENANT'S SIGNATURE:**
_____    _____
Print Name:_____    Print Name:_____

STATE OF _____ )
                        )ss:.
COUNTY OF _____ )

    On the __ day of _____ 201_, before me, the undersigned
personally appeared _____, personally known to
me or proved to me on the basis of satisfactory evidence to be
the individual(s) whose name(s) is (are) subscribed to the
within instrument and acknowledged to me that he/she/they
executed the same in his/her/their capacity(ies), and that by
his/her/their signature(s) on the instrument, the individual(s),
or the person upon behalf of which the individual(s) acted,
executed the instrument.

_____
Signature and Office of
individual taking acknowledgment

Document Ref: 7N8NA-B8QZJ-ZHIAE-SWTRF

**TEXAS LEASE ADDENDUM**

NOTICE: <u>If Landlord fails to repair a condition that materially affects the physical health or safety of an ordinary tenant as required by this lease or the Property Code, Tenant may be entitled to exercise remedies under §92.056 and §92.0561 of the Property Code. If Tenant follows the procedures under those sections, the following remedies may be available to Tenant: (1) terminate the lease and obtain an appropriate refund under §92.056(f); (2) have the condition repaired or remedied according to §92.0561; (3) deduct from the rent the cost of the repair or remedy according to §92.0561; and (4) obtain judicial remedies according to §92.0563. Do not exercise these remedies without consulting an attorney or carefully reviewing the procedures under the applicable sections. The Property Code presumes that 7 days is a reasonable period of time for the Landlord to make a diligent effort to repair a condition unless there are circumstances which establish that a different period of time is appropriate (such as the severity and nature of the condition and the availability of materials, labor, and utilities). Failure to strictly follow the procedures in the applicable sections may cause Tenant to be in default of the lease.</u>

# Signature Certificate

Document Ref.: 7N8NA-B8QZJ-ZHIAE-SWTRF

Document signed by:



### Benjamin Black

E-mail:
benjamin@easyknock.com
Signed via link

IP: 74.65.198.147    Date: 27 Aug 2020 16:14:38 UTC





### Cristina Felix

Verified E-mail:
cruzvi2693@yahoo.com

IP: 107.77.197.8    Date: 27 Aug 2020 16:20:55 UTC



Document completed by all parties on:
27 Aug 2020 16:20:55 UTC
Page 1 of 1



Signed with PandaDoc.com

PandaDoc is the document platform that boosts your
company's revenue by accelerating the way it transacts.

